UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
ELAD NAVANA,
GILAD TALMOR                                                       :   **COMPLAINT**
                                                                   :
                    *Plaintiffs*,                                  :   **15-CV-6004**
                                                                   :
            -against-                                              :   JURY TRIAL DEMANDED
                                                                   :
THE CITY OF NEW YORK, POLICE OFFICERS                              :
DANIEL FITZPATRICK, (shield no. 3870); KENNETH                     :
MONAHAN, (shield no. 5088); AND "JOHN DOES"                        :
NOS. 1-12 (*the names "John Doe" being fictitious, the*            :
*real names being currently unknown*)                              :
                                                                   :
                    *Defendants.*                                  :
------------------------------------------------------------------ X

Plaintiffs ELAD NAVANA and GILAD TALMOR, by and through their attorneys, **THE LAW OFFICES OF KENNETH F. SMITH, PLLC**, complaining of the defendants herein, respectfully shows the Court and alleges:

### PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs seek relief for the defendants' violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983; by the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2.      The claims arise from a March 2014 incident in which officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, *inter alia*, Assault, Battery, Excessive Use of Force, Failure to Intervene, False Arrest, False Imprisonment and Falsification of Evidence.

1

3. The plaintiffs seek monetary damages (special, compensatory and punitive) against defendants, as well as an award of attorney's fees and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343 and 1367(a).

5. The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

6. Venue herein is proper for the United States District Court for the Southern District of New York under 28 U.S.C. §1391 (a), (b) and (c), in that the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## JURY DEMAND

7. Plaintiffs demand a trial by jury in this action.

## PARTIES

8. Plaintiff ELAD NAVANA is a thirty year old male who at all times hereinafter mentioned was and is a resident of the State of New York, New York County.

9. Plaintiff GILAD TALMOR is a forty-one year old male who at all times hereinafter mentioned was and is a resident of the State of New Jersey, Hudson County.

10. Defendant CITY OF NEW YORK ("CITY") is a municipality organized and existing under the laws of the State of New York. It operates the New York City Police Department ("NYPD") a department or agency of defendant CITY responsible for the appointment, training,

supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

11. Defendants DANIEL FITZPATRICK, THOMAS MONAHAN and "JOHN DOES" Nos. 1-12 are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of defendant CITY and/or the NYPD. Defendants Fitzpatrick, Monahan and "Does" are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant CITY, were acting for, and on behalf of, and with the power and authority vested in them by defendant CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

12. The real names of Police Officers "*John Does 1-12*" are currently unknown.

13. The defendant police officers are sued in their individual and official capacities.

## STATEMENT OF FACTS

14. On or about March 26, 2014, approximately 11PM, plaintiffs Elad Navana and Gilad Talmor were inside the Lace Gentlemen's club, at 725 7th Ave, New York, NY 10019, New York County.

15. Plaintiffs had only been in the establishment for a few minutes when several men approached plaintiff Talmor and told him there was a "problem".

16. Immediately, before Talmor was able to say or do anything, defendants *John Does* 1-6, upon information and belief, accompanied by defendant Fitzpatrick, punched plaintiff Talmor in the face and slammed him to the ground.

17. Defendant officers continued to use force on Talmor while he was on the ground: one defendant officer applied a chokehold to Talmor's neck, another stomped and kicked Talmor's

body while another defendant officer tightly applied handcuffs to Talmor's wrists, using a degree of force to "lock" the cuffs in an extremely tight position with pressure and constriction far in excess of that required to reasonably restrain plaintiff's wrists.

18. Defendant officers then dragged plaintiff up a flight of stairs in such a manner that plaintiff Talmor's head made repeated forceful contact with the stairs, before slamming him to the concrete outside.

19. While outside, plaintiff Talmor was repeatedly struck and kicked by defendant officers.

20. While the foregoing was occurring, plaintiff Navana also was contacted by defendant officers.

21. Navana saw defendant officers assaulting plaintiff Talmor and began to voice an objection.

22. Before plaintiff Navana was able to raise his voice in protest against the assault of Talmor, Navana himself was assaulted.

23. Defendant officers slammed Navana to the ground face down. One officer applied a chokehold to Navana by wrapping his arm around Navana's neck with the defendant officer's inner elbow constricting the windpipe and carotid arteries of Navana.

24. Another officer handcuffed Navana and began to lift him up, backwards, by his handcuffed arms, while delivering closed-fist punches to Navana's unprotected torso.

25. Navana was carried outside in this manner—with one defendant officer choking his neck, another defendant officer hoisting him backwards by his restrained arms, and a third defendant officer carrying his lower body—and thrown to the concrete outside, all the while being choked by one defendant officer and repeatedly punched in the torso by another.

26. Once Navana began to lose consciousness, the chokehold was released and the defendant officer began to scrape Navana's head and face against the concrete.

27. At some point, additional police officers (defendant officers *John Does* 7-10) responded to the scene, and both plaintiffs were transported to a local precinct.

28. Plaintiff Talmor, screaming in pain, repeatedly asked the officers to slightly loosen the handcuffs but was alternately ignored, laughed at and cursed at.

29. Plaintiffs were held overnight at the precinct, in filthy and degrading conditions. At no time were they told by defendant officers, despite many requests, *why* they had been arrested.

30. Defendant Kenneth Monahan, upon information and belief the supervising Sgt. on duty in the precinct, approved, ratified and condoned the arrest of plaintiffs, and approved, ratified and condoned the use of force by defendant officers against plaintiffs.

31. While at the precinct, and in a bruised and bloodied physical condition, two additional police officers (*John Does* 11 and 12) had contact with plaintiffs.

32. Defendants *John Does* 11 and 12 interviewed both plaintiffs regarding the incident and the use of force by the police.

33. Upon information and belief, defendant officers *John Does* 11 and 12 were dispatched from an NYPD investigative unit to evaluate whether the use of force by defendant police officers was, in fact, justified.

34. The next day, plaintiffs were transported to Central Booking and placed in a filthy and extremely overcrowded holding cell with many other arrestees.

35. While in the holding cell, there were incidences of assault, with several inmates having a long and brutal fight during which one inmate's head was repeatedly slammed into a payphone

by another inmate—all of which went unchecked by law enforcement who tacitly condoned the violence.

36. Due to the overcrowding and violence in the cell, plaintiffs were not able to sit but were forced to remain standing for many hours.

37. Plaintiffs who observe kosher food regulations, were unable to eat the "food products" provided at Central Booking and went hungry.

38. Finally, both plaintiffs were arraigned on a criminal court complaint charging them with the crimes of Resisting Arrest (NY Penal Law § 205.30) and Criminal Trespass in the Third Degree (NYPL § 140.10(a)), both Class "A" misdemeanors, as well as the violation of Trespass (NYPL § 140.05).

39. Said criminal court complaint was deposed and signed under penalty of perjury by defendant police officer Fitzpatrick, and contains false affirmations regarding the incident which give the accusatory instrument a veneer of legal sufficiency.

40. Plaintiffs appeared in Criminal Court on two successive dates. On the second, of those dates (July 1, 2014), the charges against both men were dismissed in their entirety and ordered sealed.

41. Plaintiff Talmor suffered physical injuries as a result of the foregoing conduct by defendant police officers, including, cuts and bruises to the face, head and body, cuts, abrasions and nerve damage to his wrists as a result of defendant officers' abuse of handcuffs for which Talmor has received medical treatment, for ongoing, residual pain.

42. Plaintiff Navana suffered physical injuries as a result of the foregoing conduct by defendant police officers, including, cuts and bruises to the face, head and body. Navana still suffers from residual pain to the torso/rib area where he was repeatedly punched.

6

43. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's office at 1 Centre Street, New York, New York.

44. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

45. This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

## GENERAL ALLEGATIONS

46. Plaintiffs did not commit any crimes against any persons as alleged by defendant police officers;

47. Plaintiffs were never asked to leave the establishment, but were assaulted in the first instance.

48. Plaintiffs did not resist arrest during their interactions with defendant police officers.

49. Plaintiffs did not possess any contraband or other illegal materials at any time in the above-mentioned incidents.

50. At all times during the events described, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs;

51. During all of the events described, the defendant police officers acted maliciously and with intent to injure plaintiffs.

52. Defendant police officers unlawfully and illegally arrested plaintiffs with no probable cause to believe that they had committed a crime.

53. No amount of force was justified against plaintiffs: in this context the amount of force used by defendant police officers was excessive.

54. The individual defendant police officers acted under pretense and color of state law in their individual and official capacities and within the scope of their employment. Said acts by said defendant police officers were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendant officers acted maliciously, willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights.

55. Upon information and belief, there exists an official NYPD policy with respect to the use of handcuffs.

56. Upon information and belief, there exists a custom within the NYPD of using handcuffs inappropriately, specifically, by applying (and locking) them over-tightly with force far in excess of that needed to actually prevent a handcuffed person from withdrawing their hands from the handcuffs or otherwise "defeating" the handcuffs.

57. Upon information and belief said custom of applying handcuffs over-tightly is used to maliciously cause discomfort, pain and injury to arrested persons in a manner that is difficult to identify or detect since application of handcuffs (subject to the policies and procedures governing their appropriate use) is a part of every arrest.

58. Upon information and belief, there exists an official NYPD policy requiring that a supervising officer approve arrests made by non-supervisory officers.

59. Upon information and belief, there exists an official NYPD policy requiring that arrest paperwork (and/or paperwork generated in connection with the arrest of a person) be signed and/or otherwise approved by a supervising officer.

60. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

   a) Violation of plaintiffs' rights to Free Speech, pursuant to the First Amendment to the United States Constitution and Article One of the New York State Constitution;

   b) Violation of plaintiffs' rights, pursuant to the Fourth Amendment of the United States Constitution and Article One of the New York State Constitution, to be free from unreasonable search and seizure;

   c) Violation of plaintiffs' rights, pursuant to the Fifth and the Fourteenth Amendments to the United States Constitution and Article One of the New York State Constitution, to Due Process of Law;

   d) Violation of plaintiffs' rights, pursuant to the Eighth Amendment to the United States Constitution and Article One of the New York State Constitution, to be free from cruel and unusual punishment;

   e) Loss of liberty;

   f) Opportunity loss;

   g) Pain and suffering;

   h) Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience and anxiety;

   i) Economic loss;

   j) Physical Injury;

   k) Fear and apprehension of physical injury,

## FIRST CLAIM
### (FALSE ARREST UNDER FEDERAL LAW)

61. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein

62. On the above incident date, defendants Fitzpatrick, Monahan, and *John Does* 1-6 falsely arrested plaintiffs without an arrest warrant, probable cause, or any reasonable suspicion that plaintiffs had committed or were in the process of committing a crime.

63. Accordingly, defendant police officers are liable to plaintiffs for False Arrest under 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

64. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## SECOND CLAIM
## (UNREASONABLE FORCE UNDER FEDERAL LAW)

65. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

66. On the above incident date, defendant officers' use of force upon plaintiff was objectively unreasonable.

67. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were not breaking any laws, and were unarmed, compliant, and did not resist arrest.

68. Those defendants who did not touch the plaintiff but witnessed the unlawful conduct, but failed to intervene and protect plaintiff from this conduct are also liable to plaintiff.

69. Accordingly, defendant police officers are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution.

## THIRD CLAIM
## (FAILURE TO INTERVENE UNDER FEDERAL LAW)

70. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

71. On the above described incident date, some of the defendant "*John Doe*" police officers (*John Does* 7-12) did not have direct contact with plaintiffs but had a reasonable opportunity to observe and to prevent the violations of plaintiffs' constitutional rights by their fellow offices, but failed to intervene.

72. Accordingly, defendants "*John Does*" are liable to plaintiffs for failing to intervene to prevent the violation of plaintiffs' Constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

73. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## FOURTH CLAIM
## (FALSIFICATION OF EVIDENCE UNDER FEDERAL LAW)

74. The preceding paragraphs are here incorporated by reference.

75. Defendants Fitzpatrick and Monahan are liable to plaintiffs because they intentionally conspired to fabricate evidence against plaintiffs, depriving plaintiffs of liberty without due process of law by drafting and/or signing sworn criminal court complaints and false police reports.

76. Furthermore, the defendants violated the law by making false statements by drafting and/or signing sworn criminal court complaints and false police reports.

77. Furthermore, the individual defendants violated the law by manipulating evidence to attempt to obtain a prosecution and unjust conviction, while performing the function of investigators.

78. The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that individuals who knowingly use false evidence at

11

trial to obtain a conviction act unconstitutionally and that this is redressable in an action for damages under 42 U.S.C. § 1983.

79. The individual defendants are also liable to plaintiffs because they intentionally created false information of a sort that is likely to influence a fact finder's or jury's decision, and which could give a false veneer of credibility to the charging documents by, among other things, forwarding false information to prosecutors, drafting and signing sworn criminal court complaints and police reports, omitting and/or manipulating evidence, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiffs' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

80. As a direct and proximate result of the abuse of authority detailed above, plaintiffs sustained the damages stated.

## FIFTH CLAIM
### (FALSE ARREST AND FALSE IMPRISONMENT UNDER STATE LAW)

81. Plaintiffs repeats and reallege all the foregoing paragraphs as if the same were fully set forth at length herein

82. By their conduct, as described herein, the individual defendant police officers are liable to plaintiffs for falsely imprisoning and falsely arresting them.

83. Plaintiffs were conscious of their confinement.

84. Plaintiffs did not consent to their confinement.

85. Plaintiffs' confinement was not otherwise privileged.

86. Defendant CITY, as an employer of the individual police officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

87. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

## SIXTH CLAIM
## (ASSAULT AND BATTERY UNDER STATE LAW)

88. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

89. By their conduct, as described herein, the defendant police officers are liable to plaintiffs for having assaulted and battered them.

90. Defendant CITY, as an employer of the individual defendant police officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

91. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

## SEVENTH CLAIM
## (NEGLIGENT HIRING, TRAINING AND RETENTION UNDER STATE LAW)

92. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

93. Defendant CITY, through the NYPD, owed a duty of care to plaintiffs to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiffs or to those in a like situation would probably result from the foregoing conduct.

94. Upon information and belief, the individual defendant police officers were unfit and incompetent for their positions

95. Upon information and belief, defendant CITY knew or should have known through the exercise of reasonable diligence that the individual defendant police officers were potentially dangerous.

96. Upon information and belief, defendant CITY's negligence in screening, hiring, training, disciplining, and retaining these defendant police officers proximately caused each of plaintiff's injuries.

97. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

**WHEREFORE**, plaintiffs demand a jury trial and the following relief, jointly and severally against the defendants:

  a. Compensatory damages in the amount of one million dollars ($1,000,000);

  b. Punitive damages in the amount of two million dollars ($2,000,000);

  c. Costs, interest and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and,

  d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: Brooklyn, New York
July 30, 2015

Respectfully submitted,

**KENNETH F. SMITH**
Counsel for Plaintiffs

*/s/ Ken F. S.*

The Law Offices of
Kenneth F. Smith, PLLC
16 Court Street, Suite 2901
Brooklyn, NY 11241
(646) 450-9929
(646) 514-4524 (FAX)